Pigott, J.
(concurring). While I agree with my colleagues that remittal to Surrogate’s Court is the appropriate result, I write separately to express my disagreement with the majority’s dicta, in the hope that this added language will not be misinterpreted as a holding by this Court and lead the Surrogate to believe the issue has already been decided.
The issue for the Surrogate to resolve on remittal is whether there were four original instruments or one original and three *464 copies of the decedent’s will (see Roche v Nason, 185 NY 128 [1906]; Matter of Andriola, 160 Misc 775 [Sur Ct, Kings County 1936]). If the Surrogate determines that there were four original instruments, he must then decide whether the presumption of revocation was triggered and whether that presumption was rebutted (see Crossman v Crossman, 95 NY 145 [1884] [presumption]; Matter of Fox, 9 NY2d 400 [1961] [rebuttal]).
The majority discusses the ex-husband’s testimony and surmises that “the natural, albeit less than certain, import of [the ex-husband’s] testimony was that each copy was intended to be a functional instrument” (majority op at 460). The majority further states that “ex-husband’s testimony indicat [es] that the 1996 will had, by design, been executed in four equally functional counterparts to be kept separately at specified locations” (majority op at 461 [emphasis added]). In doing so, the majority, in essence, discredits the ex-husband’s testimony that he and the decedent executed “two wills, two power of attorneys and two directive to physicians,” and that there was only one original of “each six documents.” The quality and weight afforded to ex-husband’s testimony, as well as any other testimony, is clearly in the province of Surrogate’s Court. In other words, whether there were “four equally functional counterparts” of the decedent’s will is a question of fact that is left to be resolved by the Surrogate.
The majority then suggests, again in dicta, that
“the facts of record, adduced in critical part through the testimony of petitioner’s son, supported inferences that decedent executed her 1996 will in quadruplicate, with each document having been meant to possess the force of an original instrument', that one of the will duplicates was kept at the Clayton, New York home where decedent resided after her divorce; and that, after a thorough search, no will was found there [and that] [pjlainly, these circumstances sufficed to raise the presumption that decedent revoked her 1996 will by destroying it. It is equally plain that that presumption was not rebutted” (majority op at 462 [emphasis added]).
While the majority may claim that it is simply reading the record before it, this dicta may be viewed by some as a disguised holding. “However grievous the errors a court commits when it writes dictum disguised as holding, those errors *465 would be neutralized if the next court would recognize the prior dictum as nonbinding and go on to grapple with and decide the issue” (see Pierre N. Leval, Madison Lecture, Judging under the Constitution: Dicta About Dicta, 81 NYU L Rev 1249, 1268-1269 [2006] [emphasis added]). I encourage the Surrogate’s Court to “grapple with and decide the” issues without consideration of the majority’s dicta.
Judges Read, Rivera, Abdus-Salaam and Stein concur; Judge Pigott concurs in result in a separate concurring opinion; Judge Fahey taking no part.
Orders modified, without costs, by remitting to Surrogate’s Court, Jefferson County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.